UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD CROMER,

    Plaintiff,

v.    Case No. 2:09-cv-220
    HON. GORDON J. QUIST

CATHERINE BAUMAN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Edward Cromer, an inmate currently confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections. Specifically, defendants include Warden C. Bauman, Case Manager Peggy Ann Carberry, Guard Lyle Enterline, Nurse Ruby Cheatham, Guard Bradley, Sergeant B. Hursh, Guard Gary Monticello, Guard J. Denman, Guard M. Rondeau, Hearings Officer Linda Maki and Unknown Eyke. Plaintiff is suing these defendants "to dismantle and destroy an internal group that has meticulously and incessantly destroyed positive law (American Disability Act, Religious Land Use and Institutionalized Persons Act, HIIPA, 14th Amendment and other federal statutes)." Plaintiff alleges that he suffers with high blood pressure, high cholesterol, and mental illness that limits his ability to cope with reality.

Plaintiff's claims against defendant Carberry involve the alleged destruction of his typewriter in August 2007. Plaintiff asserted claims regarding his typewriter against defendant Carberry in a previous case that was dismissed. However, in the instant case, plaintiff is alleging an

equal protection violation which plaintiff argues was not considered in the previous lawsuit. Plaintiff's claims against defendant Maki make a challenge to MCL § 791.251 and whether she had jurisdiction to determine if a misconduct ticket was valid.

Plaintiff is suing defendant Paul Eyke, a prison psychologist, for his failure to train and ensure compliance by prison staff with policy directives and federal law with respect to inmate mental health. Plaintiff claims violations of, and failed compliance with the Americans With Disabilities Act and the Rehabilitation Act. Warden Catherine Bauman is named for maintaining a secret military force within the prison. Plaintiff also claims that Warden Bauman has held plaintiff in prison for over twenty years, although he committed no crime. Plaintiff alleges that defendants Enterline, Hursh, Bradley, Monticello, Denman and Rondeau harass plaintiff with false misconducts simply to exacerbate his mental illness.[1] Defendants Bauman, Carberry, Enterline, Eyke, Hursh, Maki, Monticello and Rondeau have moved for summary judgment. Plaintiff has filed a responsive pleading labeled as a motion for summary judgment. Plaintiff's request for relief asks the court to schedule a trial.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

---

[1] Plaintiff has made numerous claims, some of which are difficult to decipher.

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Carberry asserts that the claims against her should be dismissed on the basis of res judicata because plaintiff already brought claims against her involving his typewriter in a previously dismissed case. Plaintiff claims that the prior case was not dismissed on the merits and that his equal protection claim was never addressed. In *Cromer v. Carberry, et al.*, Case No. 2:08-cv-203, plaintiff brought claims regarding his typewriter against defendant Carberry. Those claims were dismissed on the merits for failure to state a claim.

The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327,

1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen,* 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).[2]

Plaintiff previously brought a claim regarding his typewriter against defendant Carberry. That claim was dismissed on the merits. Plaintiff cannot bring another claim regarding his typewriter against defendant Carberry, even if his claim alleges a different legal theory. Plaintiff had the opportunity to present all his theories regarding his typewriter against defendant Carberry in the previous case. Plaintiff had the opportunity to appeal the decision against him. If plaintiff believes that he brought an equal protection claim against defendant Carberry in the previous case that was not decided by the court, plaintiff's recourse was to appeal the previous case on that issue, not to file a new case. In the opinion of the undersigned, defendant Carberry is entitled to dismissal from this action.

Defendant Linda Maki argues that as a hearings officer she is protected by absolute immunity for decisions she makes on misconduct tickets. Plaintiff argues that defendant misunderstands his claim. Plaintiff is challenging Linda Maki's jurisdiction to hear his case, whether there is a separation of powers violation, and whether MCL § 791.251 contains an enacting clause.

---

[2]The doctrine of collateral estoppel or issue preclusion bars issues of fact or law that were decided and necessary to the judgment in subsequent proceedings, on a different cause of action, against any party to the prior proceeding. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414; *Black*, 15 F.3d at 582.

Defendant Maki is entitled to immunity for the decision that she made during a misconduct hearing. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).

Although plaintiff is challenging MCL § 791.251, plaintiff has not shown how this statute could violate the United States Constitution or federal law. The statute itself comparts with due process. To the extent that plaintiff is asserting claims under Michigan law or the Michigan Constitution, it is recommended that the court dismiss such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

Defendants Bauman and Eyke move to dismiss for lack of personal involvement. Plaintiff admits that he is suing defendants Bauman and Eyke for supervisory liability and for failure to train employees. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S.

at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). In the opinion of the undersigned, defendants Eyke and Bauman should be dismissed from this action.

Alternatively, defendants Bauman, Eyke and Maki claim they are entitled to qualified immunity. Defendants Rondeau, Enterline, Hursh and Monticello move for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff asserts that defendants violated his free speech rights, the Americans With Disabilities Act, the Eighth Amendment and the Fourteenth Amendment by issuing false misconduct tickets to send him to administrative segregation and to prevent him from obtaining medically issued shoes. Plaintiff claims that defendants are part of an internal group under the control of the Warden that take illegal actions against mentally ill prisoners.

Plaintiff complains that defendant Hursh violated his rights by hurrying plaintiff through his meal on March 10, 2009, although plaintiff has a medical detail for extra time to eat. Defendant Hursh had been assigned to the unit only one day and had no knowledge of a medical detail providing plaintiff more than the allotted twenty minutes to complete a meal. Defendant Hursh instructed plaintiff to leave the dining area once she believed that he was finished eating. Plaintiff has asserted that defendant Hursh's claims are false and that she had planned to instruct plaintiff to leave the chow hall even before he entered. Plaintiff's assertions are not supported by any factual evidence. Moreover, plaintiff has presented only a single isolated incident. Plaintiff is not asserting that he was denied his meal. He is simply asserting that he was not given more than twenty minutes to eat his meal. Defendant Hursh did not restrict plaintiff's meal time. She merely sent plaintiff out of the dining hall when it appeared to her that plaintiff had finished eating. Even if defendant Hursh made a mistake, in the opinion of the undersigned, that mistake did not violate plaintiff's Eighth Amendment rights.

Plaintiff asserts that defendant Enterline deprived him of his therapeutic shoes and state issued shoes. Plaintiff has not established that he is entitled to therapeutic shoes. Although plaintiff claims that he wears out his shoes every two or three weeks, he has not shown that he was deprived of shoes. Plaintiff believes that he should be able to get new shoes whenever he wants at State expense. Plaintiff complains that defendant Enterline is just trying to save money like it is

coming out of his own personal finances and not from the State of Michigan. In the opinion of the undersigned, plaintiff has not shown that defendant Enterline violated plaintiff's Eighth Amendment rights regarding plaintiff's shoes.

Plaintiff claims that the misconduct tickets issued by defendants were retaliatory acts. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The misconduct tickets issued by defendants were upheld at hearings. Plaintiff has not shown that the tickets were motivated by protected conduct. Rather, in each instance, the charges were supported by factual evidence. Plaintiff's assertions that an internal group was formed to force mental ill prisoners, like plaintiff, into administrative segregation is unsupported by any evidence.

Plaintiff can assert no actionable claims under the Ninth or Tenth Amendments to the United States Constitution. The Ninth Amendment is not considered as a specific guarantee of individual liberty. *But see, Griswold v. Connecticut*, 381 U.S. 479, 486-99 (1965), concurring opinion, expressing the view that the Ninth Amendment recognizes additional individual rights. The Ninth Amendment states:

> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Plaintiff has failed to show how the Ninth Amendment was violated by defendants. Similarly, plaintiff has asserted that defendants violated the Tenth Amendment. The Tenth Amendment provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

Plaintiff explains that most corrections officers are white and that ten percent are family related. Plaintiff argues that it is in the interests of corrections officers to maintain high security prisons to ensure good paying jobs. Plaintiff claims that this internal group, which defendants are part of, exaggerate their responses to prisoner acts so they can work overtime and make more money. It appears that plaintiff is arguing that the entire misconduct ticket and hearing process is simply in existence to justify the need for corrections officers and to pay higher salaries to corrections officers. However, in the opinion of the undersigned, plaintiff has not shown that defendants violated any rights owed to plaintiff under the Ninth Amendment or the Tenth Amendment. In the opinion of the undersigned, defendants Bauman, Eyke, Maki, Rondeau, Enterline, Hursh and Monticello are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment filed by defendants Rondeau, Bauman, Hursh, Enterline, Maki, Carberry, Monticello and Eyke.[3] Accordingly, it is recommended

---

[3] Defendants Denman and Bradley have filed a motion for summary judgment that is pending and not part of this recommendation.

that defendants' motion for summary judgment (Docket #36) be granted.[4] It is further recommended that plaintiff's motion for summary judgment (Docket #51) be denied.[5]

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                              /s/ Timothy P. Greeley
                                                             TIMOTHY P. GREELEY
                                                             UNITED STATES MAGISTRATE JUDGE

Dated: February 9, 2011

---

[4] To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

[5] Plaintiff's motion, labeled as a motion for summary judgment, simply asks that the court schedule a trial. The pleading is actually a responsive pleading to defendants' motion for summary judgment.