UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD JAMES CROMER,

    Plaintiff,

v.                                                                    Case No. 2:09-cv-220
                                                                      HON. GORDON J. QUIST

CATHERINE BAUMAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Edward James Cromer, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC).  However, the only Defendants remaining in this action are Jill Denman and Brent Bradley, both of whom are employed, or were previously employed, at LMF.

        Plaintiff's complaint alleges that Defendant Bradley used excessive force when attempting to remove Plaintiff from the prison cafeteria after meal time had ended.  Plaintiff alleges that Defendant Bradley acted in retaliation of protected conduct.  Plaintiff claims that Defendant Bradley issued Plaintiff a misconduct even though doctors had prescribed a medical order giving Plaintiff extra time to eat.  Plaintiff's complaint also alleges that Defendant Denman filed an Incite to Riot or Strike Misconduct Report against Plaintiff in retaliation for Plaintiff placing himself on suicide watch, which Plaintiff insists is protected conduct.

Plaintiff claims that Defendants' actions violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory relief.

Presently before the Court are both Plaintiff's and Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.

1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendant Bradley violated his Eighth Amendment rights. Plaintiff alleges Defendant Bradley refused to loosen his handcuffs and dug into Plaintiff's arms with his fingernails. Plaintiff alleges that after he requested his restraints be loosened, Defendant Bradley slammed Plaintiff's head against a steel door causing a nose bleed. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim of excessive force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also*

3

*Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

   Defendant Bradley handcuffed Plaintiff after another corrections officer ordered Plaintiff to leave the unit cafeteria. Plaintiff became disruptive and threatening, and failed to comply with the order. (Def. Ex. 1, ¶ 6). After being restrained, Plaintiff continued his belligerent behavior and Defendant Bradley placed him against the wall while waiting for other staff to arrive to help. (Def. Ex. 1,¶ 10). Plaintiff was brought up on administrative charges of "Disobeying a Direct Order" and "Threatening Behavior" for which he was found guilty. Furthermore, after an examination by a doctor, no traces of blood or major injuries were reported. Defendant Bradley asserts the level of force used against Plaintiff was necessary to maintain discipline and was applied in a good-faith effort to prevent Plaintiff from engaging in belligerent and threatening behavior. Plaintiff asserts the handcuffs were applied too tightly and that Defendant Bradley slammed Plaintiff's head against a steel door when Plaintiff complained about the handcuffs. There is a material dispute of fact

4

regarding the level of force used and the need for that force. Accordingly, summary judgment must be denied on this claim.

Plaintiff also complains that Defendant Bradley violated his First Amendment rights when he retaliated against Plaintiff for engaging in protected conduct. Plaintiff claims that he was prescribed medical details ordering extra time to eat and that he was punished for taking the extra time despite an order to leave the chow hall. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Even assuming that Plaintiff can demonstrate that he engaged in protected conduct when he refused to leave the dining area, his retaliation claim fails because the alleged adverse action was the result of Plaintiff's disruptive and threatening behavior, not because Plaintiff was given more time to eat his meal. (Def. Ex. 1, ¶¶ 5-11). Plaintiff was brought up on misconduct charges and was found guilty of "Disobeying a Direct Order" and "Threatening Behavior" at the hearing regarding these matters (Defendants' Exhibit A, Affidavit of Beatrice Hursh). Based on these facts, Defendant Bradley is entitled to summary judgment on this claim because there is no showing of a connection between his exercise of "protected conduct" and an adverse action.

5

In addition, Plaintiff claims Defendant Denman retaliated against him when he engaged in "Suicide Prevention." Plaintiff was on "Constant Observation" status when he began screaming and yelling that his rights were being violated and that if prison officials were not going to do anything about it, the prisoners would. (Def. Ex. 3, ¶ 3). Plaintiff then told Defendant Denman that he and other inmates were going on suicide watch. Other prisoners began to yell and kick their cell doors while Plaintiff continued to incite them. Defendant Denman wrote a Major Misconduct Report charging Plaintiff with "Incite to Riot or Strike: Rioting or Striking." (Def. Ex. 2, ¶¶ 1-4 and Def. Ex. 2 (a)). Plaintiff was later found guilty of the charge at an administrative hearing. Plaintiff asserts that Defendant Denman falsified the Misconduct Report after unsuccessfully trying to get Plaintiff to kick out the window of his cell door and that she did so to "retaliate against Plaintiff for engaging in suicide prevention" and "to deter protected conduct." (Dkt. No. 7, ¶¶ 104-105, 110, 141). At the hearing on the misconduct, Hearing Officer L. Maki stated:

> Prisoner intended to encourage other prisoners to join him as he continued yell [sic] and told the officer, "Go ahead and write the ticket, Denman." We can't get one because we are suicidal and need health services. You are treating us like we are crazy and that is disrespectful. It is our constitutional right to receive medical services." Other prisoners joined in the disruption as another prisoner said he had taken pills and was transported to the hospital and other prisoners screamed and kicked their doors and threatened staff. Prisoner's actions caused the unit to function short of staff because of constant observation assignments, escort and transportation assignments. Prisoner did not dispute these facts but claims that "[Corrections Officer] Denman, [Corrections Officer] Monticello and [Corrections Officer] Rondeau . . . have designed an [sic] machination where this internal group plan [sic] the hearing with mentally ill witnesses / prisoners; and to continue to execute a nebulous threats [sic] by exaggerating threatening language." Prisoner complained about what happened in 2005 and in March of 2009 and what happened with another prisoner two weeks ago, but said little about the incident in question other than to notice that he was "extremely depressed" and was placed on "suicide watch" and that other prisoners weren't written misconduct reports but did

>receive their dinner trays. Reporting staff member factual and is credible as to what occurred and supported by consistent, detailed statements from other staff. Charge upheld.

(Defendants' Exhibit 2-B, p. 2.)

Defendant Denman issued the Misconduct Report to Plaintiff because he was inciting other inmates, not because he was engaged in suicide prevention. Because Plaintiff was found guilty of violating prison regulations, he was not engaged in protected conduct and cannot proceed beyond step one of the *Thaddeus-X* test. Therefore, Defendant Denman is entitled to summary judgment on this claim.

Defendants Bradley and Denman claim they are entitled to summary judgment and qualified immunity because Plaintiff cannot sustain elements essential to his claims and has made no showing of a violation of clearly established federal rights. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, \*\*1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As noted above, Defendant Denman did not violate Plaintiff's constitutional rights. Accordingly, Defendant Denman is entitled to qualified immunity. In addition, Defendant Bradley did not violate Plaintiff's right to be free from retaliation. Therefore, Defendant Bradley is entitled to summary judgment on Plaintiff's First Amendment claim. However, because a dispute of fact

exists regarding Plaintiff's Eighth Amendment claim against Defendant Bradley, Defendant Bradley is not entitled to qualified immunity on that claim.

In summary, in the opinion of the undersigned, it is recommended that Defendants' Motion for Summary Judgment (Docket #54) in regard to Plaintiff's First Amendment claims be granted.  It is further recommended that Defendants' Motion for Summary Judgment in regard to Plaintiff's Eighth Amendment claim against Defendant Bradley be denied.

With regard to Plaintiff's Motion for Summary Judgment (Docket #68), the undersigned notes that Plaintiff merely reasserts that allegations set forth in his complaint and responds to Defendants' motion for summary judgment.  Therefore, Plaintiff's motion for summary judgment is properly denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 25, 2011